Pearson, J.
 

 The plaintiff alleges, that he is a poor, ignorant old man, seventy-five years of age, and he never hada law suit before in his life. In January 1848, the defendant issued a writ against him and his son and one Davis, in case for conspiracy, laying the damage at $500. The officer, one Wells, came to his house about midnight and arrested him ; and, after exciting his fears by telling him, that the lawyer, who issued the writ, said he would do well to compromise by giving his note for $300, and by telling him, that, if it went to Court, the State would
 
 *8
 
 take it up and ruin him, and, for the second offence, would hang him, advised him, as a friend, that he had better go to the house of the defendant and settle, and said he thought he could get him off for $ 100. After being in custody until morning, he concluded to go to the defendant and buy his peace. The officer took him to the defendant’s house, some twelve miles distant. He was not at home, and the plaintiff, after remaining under arrest all day, his alarm and apprehension being increased by the combined artifice of. the wife of the defendant and the officer, agreed, if he could be discharged, to execute-a note to the defend’ant for one hundred dollars, and pay the officer thirteen dollars, which was accordingly done, and he was liberated. The plaintiff farther alleges, that the defendant had no cause of action against him whatever; that the alleged' ground of complaint was-, that his son, who had been summoned as a witness, in the case of the
 
 State for Farmer
 
 &
 
 wife
 
 and others against one McLure, on his bond as Clerk and Master, had failed to attend at October Term 1845, in consequence of which the case was continued ; and the charge was, that
 
 his son had
 
 staid away, by a conspiracy between the plaintiff, his son and Davis. The plaintiff admits, that his son did not attend at that term; but avers that he attended before and afterwards, and his testimony was in no wise material, and he was subsequently discharged by the defendant from attendance, and the case was decided by arbitrators, before whom his son was not examined.
 

 The-plaintiff further alleges, that he had no agency in keeping his son from attending Court, and no wish to do so; that he had no interest, connexion or concern with the, suit, and knew not-that the defendant had any ; that the defendant was not a party of record, and the plaintiff had no knowledge nor belief that he was beneficially interested. The plaintiff avers, that, one year after he he had recovered before the arbitrators, the defendant is
 
 *9
 
 sued the- writ, without cause-and for the mere purpose- of taking advantage of him, and had, by the falsehood and artifice of his agent and co adjufor, the officer who served the writ, taken advantage of his ignorance- and fears1, and extorted from him the note of $100, upon which the-defendant has since- taken judgment and is about to issue’ execution. The prayer is fora perpetual injunction.
 

 The defendant denies that there was any concert between him and the officer, to take advantage of the plaintiff and extort'the note from him. He says, that', believing'the plaintiff had entered into a conspiracy to keep his son from attending Court, whereby he was greatly injured, he directed his attorney- to issue the writ, left home and did not return, until a-fter the case was compromised and the note executed, when he received it and intended to collect it. He docs not state the grounds of his belief as to the alleged conspiracy, nor aver the materiality of the testimony of the plaintiff’s son,, nor assign any,- mo<tide why he.should wish him not to attend, and gives; no color-to-the-charge of conspiracy; nor does- he show any damage,, except he. Chinks he had to pay the costs of the term.for a. continuance. He admits, however,, that, it does not so. appear on the-record, and he admits lie recovered before: the arbitrators, without the. testimony of the: plaintiff’& son ; but he says, that, though not a party of record, he was beneficially interested : and complains, that the award was only for $175, when more was due, but;he. does not- aver that the result would have been different,. if the, plaintiff’s son had been examined, or that he desired to, examine him. He says, “ that, as to the,- age and ignorance of t,he-plainliff, your respondent knows.but little, and, as to-his. poverty, that is immaterial.” “He believes b.is:w.ife and- son and brother compromised the caseriinhis absence,.because she was desirous of keeping youirrespondent o.ut of litigation.” He does not: believe that.trlrey- resorted to any. artifice or fraud to alarm the
 
 *10
 
 plaintiff, who compromised willingly, not because he was in fear, but because he knew himself to be guilty. Pie further says the officer was not authorized to act as his frien'd in effecting the compromise, “nor was he author-ised, by any undue or false and extravagant language, to endeavor to coerce the plaintiff into a compromise. What'ever of nonsensical, false or other matter the said deputy sheriff conveyed to the plaintiff, your respondent claims that' he is in no wise responsible for, even if the facts were true; and that the officer was barely authorized t.o make known to the defendants in that suit the terms, upon which they could have the suit compromised : for-this defendant, so far from combining with the officer, was not.even friendly towardshimand had no confidence in him. At what hour of the night or day, the deputy sheriff served the writ, your respondent is ignorant.”
 

 In the language of the Court in the case of
 
 Heath
 
 v.
 
 Cobb; 2
 
 Dev. Eq. 191, the plaintiff “ was under duress, in-the eye of a Court of Equity. Pie was not in a condition to be dealt with ; he could not and did not stand on his rights.” No one can believe that the plaintiff executed the note for the purpose of making compensation for an injury done to the defendant. On the contrary, every one, who hears the bill and answer read over, is convinced that he executed it to relieve himself from the state of. alarm and embarrassment, in which he was involved.
 

 The equity of the bill rests upon three allegations — • The plaintiff was a poor, ignorant, old man, who had never had a law suit in his life. The defendant, without probable cause, issued a writ against him fora conspiracy — damages #500. The plaintiff, being arrested and having his fears excited by the falsehood and artifice of the defendant’s agent, executed the note to relieve himself.
 

 The answer does not meet this equity. “As to the age and ignorance of the plaintiff your repondent knows but
 
 *11
 
 little;” and “his poverty is immaterial.” Can this be called a full and fair answer to the first allegation?
 

 He says, he honestly believed, the plaintiff was guilty of a conspiracy; but he sets out no ground for his belief, and leaves the mind at a loss, even to conjecture, why he should have taken up such an idea. A witness, in an unimportant suit upon the bond of a Clerk and Master, fails to attend at one term, having attended punctually before and after, until discharged. The plaintiff, his father, has no interest or concern in the case, nor did he know that the defendant had ; and this forms the basis of a grave charge of conspiracy !
 

 As to the third allegation, the defendant says, “he is ignorant at what hour of the night or day, the defendant made the arrest;” but he positively denies, that he was authorized to coerce a compromise, by exciting the fears of the plaintiff, and claims not to be responsible, if such was the fact. The officer was the agent of the defendant in executing the writ, and it is admitted, that he was authorized to make known to the plaintiff the terms, upon which the suit could be compromised. Such being the case, it was as little as the defendant could have done, to make enquiry as to the truth of the allegations, made in respect to the conduct of his agent, before he adopted his act, by receiving the note and attempting to collect it, and, especially, before he swore to his answer, and then to have stated his belief. His neglect to do so raises an inference against him. In fact, he admits the allegation, but claims not to be responsible for the unauthorized acts of the officer. Upon this point of morals, the defendant is clearly in error. It is as much against conscience to attempt to avail one’s self of the iniquity of an agent, after it is known, as if there had been pre-concert. There is but a slight shade of distinction between the guilt of one, who receives goods, knowing them to be stolen, and of him, who procures the theft to be committed. We
 
 *12
 
 think the answer is unfair and evasive. I‘t was error to dissolve the injunction, and it ought to have been con-! tinned anti) the hearing, .because the equity of the bill is not met.
 

 Perhaps,, when the cause is heard, the proof may shew that the defendant had good cause of action. If so, i<t may be proper to adopt the course taken in
 
 Heath
 
 v. Cobb, and, instead of making the injunction perpetual, the Court may be induced to hold up the judgment, as a security for any damages the defendant may be able to recover in an action at law ; and, to this end, to remove the impediments to such action, growing out of the compromise and the Statute of Limitations. But we presume it will require a strong ease to justify sueh a course, when the damage is trifling, and “the play is not worth the candle.” It is clear that the defendant cannot conscientiously touch one cent of the plaintiff’s money, until he has established his damages by an action at law. And we cannot help feeling, that the conduct of the plaintiff’s wife, in her laudable wish “to keep him out of litigation,” would have been more praiseworthy, if she had let the old man go home, without giving his note.
 

 This opinion will be certified to the Court below, and the defendant will pay the costs of this Court.
 

 Per Cuiíiam. Ordered and decreed accordingly.